| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>DELVIN S. JUSTINIANO AYALA<br><br>Apelante | KLAN202400297 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Sobre: Art. 199 CP<br><br>Caso Núm. ISCR202200648 (402) |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro.

Rodríguez Casillas, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 6 de febrero de 2025.

Comparece ante nos el Sr. Delvin S. Justiniano Ayala (Sr. Justiniano Ayala o apelante), para que revoquemos la *Sentencia* emitida el 26 de febrero de 2024 ante la Hon. Juez Carmen Montalvo Laracuente del Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI). Allí, un jurado encontró al apelante culpable de daño agravado contra un bien inmueble perteneciente al Estado Libre Asociado de Puerto Rico y violencia doméstica contra su expareja.

Considerados los escritos de las partes y a la luz del derecho aplicable, se confirma la *Sentencia* apelada.

### -I-

El Ministerio Público presentó dos acusaciones contra el Sr. Justiniano Ayala por daño agravado al infringir el Artículo 199 del Código Penal de Puerto Rico,[1] y maltrato agravado por infracción al

---

[1] 33 LPRA sec. 5269.

Artículo 3.2 inciso (a) de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, según enmendada (Ley Núm. 54-1989).[2]

En resumen, se indicó que en horas de la madrugada del **1 de febrero de 2022**, el apelante empleó violencia psicológica contra su expareja, la Sra. Gretchen Ojeda Ojeda. Específicamente, el Ministerio Público adujo que el Sr. Justiniano Ayala **(1)** penetró en la morada de su expareja y la abrazó en contra de su voluntad en violación del Artículo 3.2 inciso (a) de la Ley Núm. 54-1989, *supra.*[3] **(2)** Que para tener acceso a la morada de su expareja, el Sr. Justiniano Ayala le ocasionó daños a una propiedad inmueble perteneciente al Estado Libre Asociado de Puerto Rico en violación al Artículo 199 inciso (d) del Código Penal, *supra.*[4] Por estos hechos, se determinó causa probable contra el apelante.

Tras los trámites de rigor, se celebró juicio por jurado los días **2 de octubre de 2023, 3 de octubre de 2023, 4 de octubre de 2023 y 5 de octubre de 2023**. En representación del Ministerio Público comparecieron el Fiscal Hassan Maldonado Cruz y la Fiscal Grace Marie Vélez Acevedo, mientras que el Lcdo. José Luis Martínez Rodríguez compareció en representación del apelante. La prueba testifical y documental del Ministerio Público se presentó en los días **2 y 3 de octubre**.

Por su parte, el Sr. Justiniano Ayala ofreció presentar como prueba de refutación el testimonio del Sr. Camilo Méndez. No obstante, el TPI no lo admitió.

Así las cosas, el Ministerio Público presentó la siguiente prueba de cargo:

- El **Agt. Juan Carlos Troche Torres** (Agt. Troche Torres) – Agente de la Policía de Puerto Rico en la División de Servicios Técnicos en la Comandancia de Mayagüez.

---

[2] 8 LPRA sec. 632.
[3] Caso Núm. ISCR202200649.
[4] Caso Núm. ISCR202200684.

*Testificó sobre su intervención con la preservación fotográfica de la escena del crimen. Declaró que el 1 de febrero de 2022 comenzó su turno a las 4:00 a.m. y que al reportarse a su estación de trabajo, se le asignó un incidente de violencia doméstica en el Distrito de Sábana Grande.[5] Específicamente, en el Residencial José Antonio Castillo en Sabana Grande donde el edificio 17, apartamento 134 sufrió daños.[6] El Agt. Troche Torres se personó a la escena y allí lo esperaban dos agentes del Distrito de Sábana Grande, que relevaron al Agt. José L. Rodríguez Franco, quien investigó la escena preliminarmente.[7]*

*La primera fotografía que el Agt. Troche Torres tomó fue del documento PPR606.1, un documento que contiene le fecha, hora, numero de querella, nombre del Agente investigador, numero de caso y el evento que se va a fotografiar.[8] En el lugar de los hechos, el Agt. Troche Torres observó en una de las ventanas tipo Miami del apartamento 134 una celosías rota.[9] El Agt. Troche Torres procedió a tomar fotografías del balcón del apartamento, las ventanas, el pasillo del edificio y el área de la escena comunal.[10]*

*Sobre las fotografías en sí, el Agt. Troche Torres declaró que reconocía las fotografías que el Ministerio Público le presentó durante el juicio porque eran las fotos fieles y exactas que tomó el 1 de febrero de 2021 sin alteración alguna.[11] La última fotografía que el Agt. Troche Torres tomó en la escena muestra el documento PPR606.1, ahora completado, donde se especificó que el motivo de la intervención fue por violencia doméstica.[12]*

*Luego de culminar sus tareas en la escena, el Agt. Troche Torres se dirigió a su estación de trabajo y dejó las fotografías junto a la PPR606.1 en un casillero para que las fotos fueran transferidas a un CD.[13]*

***En el contrainterrogatorio****, el Agt. Troche Torres declaró que llegó a la escena dos horas marte de haber ocurrido los hechos.[14] Explicó que su función en la escena era fotografiar los daños relacionado al incidente de violencia doméstica.[15] Declaró que en la escena no había fiscal por lo que tomó las fotografías de acuerdo su experiencia con esas escenas.[16] Añadió que en la primera fotografía la PPR606.1 no está firmada porque el documento se firma una vez finalice el trabajo en la escena.[17] Por otro lado, declaró que en la escena no se le tomó una foto con las medidas de la celosía desprendida, que no observó sangre en la escena ni se le tomaron huellas dactilares a la ventana dañada.[18] Añadió el Agt.*

---

[5] Transcripción de la Prueba Oral (TPO), día 2 de octubre de 2023, pág. 43, líneas 6-7.
[6] TPO, pág. 43, líneas 10-12.
[7] TPO, pág. 43, líneas 16-19.
[8] TPO, pág. 44, líneas 1-4.
[9] TPO, pág. 44, líneas 5-11.
[10] TPO, pág. 45, líneas 13-20.
[11] TPO, pág. 49, líneas 11-22 y pág. 50, líneas 1-7. Véase también, pág. 60, líneas 21-22 y pág., 61 líneas 1-9.
[12] TPO, pág. 61, líneas 17-22 y pág. 62, línea 1.
[13] TPO, pág. 46, líneas 16-22 y pág. 47, líneas 1-4.
[14] TPO, pág. 64, línea 22 y pág. 65, líneas 1-2.
[15] TPO, pág. 65, líneas 3-10.
[16] TPO, pág. 65, líneas 21-22 y pág. 66, líneas 1-14.
[17] TPO, pág. 67, líneas 1-13.
[18] TPO, pág. 70, líneas 21-22 y pág. 71, líneas1-12

*Tronche Torres que no le tomó fotografías a la perjudicada porque nadie le pidió que lo hiciera.[19] Tampoco le tomó fotografías al Sr. Justiniano Ayala porque nadie se lo pidió y porque no vio al apelante el día de los hechos.[20]*

***En el redirecto**, el Agt. Tronche Torres explicó que en la PPR606.1 identificó el delito que motivó la intervención como violencia doméstica porque en el Centro de Mando le cursaron la querella con dicho delito.[21] Sobre la ausencia de fotografías de la perjudicada, explicó que la instrucción que se le dio fue fotografiar los daños en la escena de violencia doméstica.[22] Sobre las huellas dactilares, el Agt. Troche Torres explicó que en su experiencia, éstas se toman para identificar a una persona particular en los hechos.[23] Finalmente, declaró que la celosía contigua a la celosía desprendida estaba doblada y forzada.[24]*

***En el recontrainterrogatorio**, el Agt. Torche Torres recalcó que su única función el 1 de febrero de 2021 era fotografiar la escena.[25]*

- El **Sr. Raúl Rivera Rodríguez** (Sr. Rivera Rodríguez) – Administrador del Residencial José Antonio Castillo en Sábana Grande desde noviembre de 2022.

  *En lo pertinente al caso de epígrafe, el Sr. Rivera Rodríguez declaró que no conocía a la Sra. Gretchen Ojeda Ojeda, pero que la madre de ésta última vivía en el en el Residencial y tenía un contrato con la Administración.[26]*

- El **Agt. José L. Rodríguez Franco** (Agt. Rodríguez Franco) – Investigador para la Policía de Puerto Rico, Distrito de Sábana Grande. Declaró sobre su intervención en los hechos del 1 de febrero de 2021 como agente interventor.

  *El Agt. Rodríguez Franco declaró que para la fecha de los hechos, se encontraba de turno hasta las 4:00 a.m. del 1 de febrero y que en esa madrugada, estaba haciendo un patrullaje.[27] Que a eso de las 2:45 a.m. regresó al cuartel y estando allí, se recibió una llamada telefónica sobre una situación en el edificio 17, apartamento 134 del Residencial José Antonio Castillo.[28] Mientras se dilucidaba cómo actuarían, la llamada bajó por el sistema 9-1-1.[29] El Agt. Rodríguez Franco junto a otros agentes, se personaron al Residencial.*

  *Al llegar al edificio 17 del Residencial ser percató de que había varias personas, presumiblemente vecinos, rodeando el edificio. Una vez recibió instrucciones, se digirieron al apartamento donde presuntamente se encontraban la Sra. Gretchen Ojeda junto al Sr. Justiniano Ayala.[30] Los agentes tocaron a la puerta, pero nadie respondió. Continuaron tocando la puerta y luego de varios minutos, el Sr. Justiniano Ayala abrió la puerta y*

[19] TPO, pág. 72, líneas 19-22.
[20] TPO, pág. 73, líneas 11-15.
[21] TPO, pág. 74, líneas 9-14.
[22] TPO, pág. 74, líneas 17-21.
[23] TPO, pág. 75, líneas 2-3.
[24] TPO, pág. 75, líneas 9-10.
[25] TPO, pág. 76, líneas 20-21.
[26] TPO, pág. 80, líneas 1-4.
[27] TPO, día 3 de octubre de 2023, pág. 16, líneas 3-16.
[28] TPO, pág. 16, líneas 16-22.
[29] TPO, pág. 17, líneas 1-3.
[30] TPO, pág. 17, líneas 21-22 y pág. 18, líneas 1-2

*los agentes lograron tener acceso al interior del apartamento.[31] Inmediatamente, colocaron bajo arresto al apelante porque forzó la ventana del apartamento 134 para penetrar en el mismo.[32]*

*El Agt. Rodríguez Franco declaró que obtuvo esta información de la Sra. Gretchen Ojeda Ojeda a quien se le realizó una entrevista tanto en la escena como en la comandancia.[33] Específicamente, la perjudicada declaró que el apelante forzó la venta y una vez dentro del apartamento, al apelante le expresó que quería dormir.[34] Acto seguido, la pejudicada comenzó a gritar y es entonces cuando los vecinos llaman al sistema de 9-1-1.[35] Cuando se le mostraron las fotografías de la escena tomadas por el Agt. Troche Torres, el Agt. Rodríguez Franco declaró que el apartamento se veía igual en las fotos con la ventana rota.[36] El Agt. Rodríguez Franco declaró que al llegar al cuartel, le leyó al Sr. Justiniano Ayala las advertencias de ley y éste último optó por su derecho a no auto incriminarse.[37]*

*Declaró que, posteriormente, se comunicaron con la unidad de violencia doméstica para darle conocimiento de la situación y se asignó a la Agt. Cartagena.[38] Finalmente, declaró que luego de esa madrugada, se retiró y no tuvo ninguna otra intervención con el caso.[39]*

***En el contrainterrogatorio**, el Agt. Rodríguez Franco declaró que puso al bajo arresto al Sr. Justiniano Ayala por la declaración que la Sra. Gretchen Ojeda Ojeda le brindó.[40] De igual modo, declaró que no corroboró dicha versión de los hechos con los vecinos.[41] Que cuando arrestó al apelante, no se percató si éste tenia heridas en las manos o si había sangre en la escena.[42]*

***En el redirecto**, el Agt. Rodríguez Franco reiteró que la versión de los hechos provista por la Sra. Gretchen Ojeda Ojeda fueron que el apelante se personó al apartamento 134, le dijo que quería quedarse a dormir en la residencia, rompió la ventana y así logró tener acceso a la residencia.[43] El Agt. Rodríguez Franco declaró que corroboró el relato de la perjudicada con la escena y que, en efecto, la ventana del apartamento estaba rota.[44] De igual forma, reiteró que no vio sangre en la escena ni lesiones en las manos del apelante.[45]*

***En el recontrainterrogatorio**, el Agt. Rodríguez Franco declaró que no estuvo en la escena cuando ocurrieron os hechos, que desconocía si el apelante entró al apartamento por la puerta ni le consta de propio conocimiento si el apelante entró por la ventana.[46]*

---

[31] TPO, pág. 18, líneas 4-22.
[32] TPO, pág. 19, líneas
[33] TPO, pág. 19, líneas 16-21.
[34] *Íd.*
[35] *Íd.*
[36] TPO, pág. 23, líneas 6-8.
[37] TPO, pág. 23, líneas 9-22.
[38] TPO, pág. 27, líneas 17-22 y pág. 28, líneas, 1-4.
[39] TPO, pág. 28, líneas 5-8.
[40] TPO, pág. 32, líneas 20-22.
[41] TPO, pág. 33, líneas 3-9.
[42] TPO, pág. 34, líneas 2-12.
[43] TPO, pág. 37, líneas 6-11.
[44] TPO, pág. 37, líneas 12-15.
[45] TPO, pág. 37, líneas 19-22 y pág. 38, líneas 1-3.
[46] TPO, pág. 39, líneas 1-13.

- La **Agt. Brenda Cartagena Zaragoza** (Agt. Cartagena Zaragoza) – Agente de la policía de Puerto Rico, División de Violencia Doméstica, Área de Mayagüez. Declaró sobre su intervención con al Sra. Gretchen Ojeda el 1 de febrero de 2021 en la División de Violencia Doméstica.

    *La Agt. Cartagena Zaragoza declaró que de su investigación surge que el 1 de febrero de 2021 la Sra. Gretchen Ojeda Ojeda se encontraba en los predios del Residencial José Antonio Castillo a las 3:00 a.m. porque sacó a su mascota a hacer sus necesidades fisiológicas.[47] Que la perjudicada notó que el apelante estaba en las facilidades del Residencial por lo que, la perjudicada regresó a su apartamento y cerró la puerta.[48] El Sr. Justiniano Ayala llegó hasta el apartamento de la Sra. Gretchen Ojeda, golpeó la puerta y le pidió que lo dejara entrar para dormir allí y ella le contestó que no.[49] Acto seguido, el apelante abrió y rompió la ventana del apartamento, entró a al residencia y agarró a la perjudicada en forma de abrazo, a pesar de que ésta le pidió que la soltara.[50] La perjudicada comenzó a gritar y por eso entiende que los vecinos llamaron a la policía.[51]*

    *La Agt. Cartagena Zaragoza declaró que la Sra. Gretchen Ojeda Ojeda no tenía laceraciones, golpes o marcas y que el día de los hechos, ésta llegó con manga larga al cuartel y no quiso mostrar sus brazos.[52] De igual forma, la Agt. Cartagena Zaragoza supo que el apelante y al pejudicada tuvieron siete años de relación y al momento de los hechos, tenían tres años de separación.[53] Mas adelante, la Agt. Cartagena Zaragoza leyó de sus notas que la perjudicada declaró que el apelante la vigilaba, llamaba de diferentes números, la acechaba, se aparecía en los lugares que frecuentaba y que esto la afectaba psicológicamente porque el apelante no entiende que la relación terminó.[54]*

    *La Agt. Cartagena declaró que posteriormente, acudió a la Fiscalía de Mayagüez, consultó el caso con el fiscal de turno y éste le autorizó radicar cargos.[55] Sobre la llamada al sistema de emergencias, la Agt. Cartagena Zaragoza declaró que los vecinos llamaron a la policía, pero no sabe quién fue ya que es anónimo.[56]*

    ***En el contrainterrogatorio***, *declaró que no entrevistó a la perjudicada en el lugar de los hechos, no visitó el lugar de los hechos, no vio el lugar y, por lo tanto, no vio la ventana rota.[57] Declaró que no indagó por qué la perjudicada sacó a su mascota a las 3:00 a.m.. de igual forma, declaró que tampoco entrevistó a los vecinos.[58]*
- La **Sra. Gretchen Ojeda Ojeda** (Sra. Gretchen Ojeda) – Víctima y expareja del Sr. Justiniano Ayala.

---

[47] TPO, pág. 43, líneas 19-22.
[48] TPO, pág. 44, líneas 1-2.
[49] TPO, pág. 44, líneas 2-4.
[50] TPO, pág. 44, líneas 5-8.
[51] TPO, pág. 44, líneas 8-9.
[52] TPO, pág. 58, líneas 16-17 y pág. 59, líneas 1-3.
[53] TPO, pág. 59, líneas 6-10.
[54] TPO, pág. 61, líneas 9-12.
[55] TPO, pág. 62, líneas 1-2.
[56] TPO, pág. 67, líneas 2-8.
[57] TPO. pág. 69, líneas 12-21.
[58] TPO, pág. 70, líneas 5-21.

*La Sra. Gretchen Ojeda declaró que ella y el apelante fueron pareja por 7 años.[59] Que su relación fue de mucho maltrato ya que tuvieron problemas, discusiones, que el apelante le pegó y que, de igual forma, también hubo maltrato verbal y psicológico.[60] Que, precisamente, por ese maltrato decidió terminar su relación con el apelante, pero que el apelante no aceptó que terminaran.[61] Alegó que el apelante la llamaba y hostigaba con sus amistades.[62] Tanto así, que la Sra. Gretchen Ojeda declaró que obtuvo una orden de protección contra el apelante.[63]*

*Declaró que en horas de la madrugada del 1 de febrero de 2021, sacó a su mascota dentro del Residencial. Notó que el apelante estaba en las facilidades del Residencial por lo que, regresó a su apartamento y cerró la puerta. El Sr. Justiniano Ayala llegó hasta el apartamento, golpeó la puerta y le pidió que lo dejara entrar para dormir allí y ella le contestó que no. Luego, el apelante abrió y rompió la ventana del apartamento, entró a la residencia y agarró a la Sra. Gretchen Ojeda en forma de abrazo, en contra de su voluntad. La perjudicada comenzó a gritar y luego llegó la policía.*

***En el contrainterrogatorio**, la Sra. Gretchen Ojeda declaró que durante los siete años de relación con el apelante, vivieron juntos en el Estado de la Florida.[64] De otro lado, negó haber maltratado al Sr. Justiniano Ayala.[65] Declaró que hubo otros casos criminales por Ley Núm. 54-1989 y que estos no prosperaron.[66]*

*Declaró que el 31 de enero de 2021, llamó en dos ocasiones al apelante para decirle que no la llamara más y para insultarlo.[67] Negó haberlo llamado para para saber a qué hora el apelante saldría del trabajo.[68] De igual forma, negó haber ido a un establecimiento de comida rápida con el apelante o haber discutido porque ella le pidió dinero al apelante.[69]*

Completado el desfile de prueba del Ministerio Público, el Sr. Justiniano Ayala se disponía a presentar al **Sr. Camilo Méndez** como testigo de refutación, quien alegadamente testificaría que había visto a la víctima buscando y regresando al apelante a su casa.[70] No obstante, el Ministerio Público se opuso, ya que el apelante no sentó las bases para presentar evidencia de esa naturaleza, pues en el contrainterrogatorio la Defensa nunca

---

[59] TPO, pág. 81, líneas 14-18.
[60] TPO, pág. 82, líneas 9-22.
[61] TPO, pág. 83, líneas 11-13
[62] TPO, pág. 83, líneas 17-18.
[63] TPO, pág. 84, líneas 10-12.
[64] TPO, pág. 94, líneas 18-22.
[65] TPO, pág. 95, líneas 13-20.
[66] TPO, pág. 97, líneas 10-14.
[67] TPO, pág. 102, líneas 19-22 y pág. 109, líneas 3-10.
[68] TPO, pág. 109, líneas 12-14.
[69] TPO, pág. 112, líneas 15-18.
[70] TPO del 4 de octubre de 2023, pág. 11, líneas 4-5, pág. 25, línea 11.

preguntó a la perjudicada si ella buscaba o no al apelante a su casa o con qué frecuencia lo buscaba a la casa, ni quiénes estaban presentes.[71] Aunque originalmente el TPI aceptó la presentación de dicho testigo, al próximo día 5 de octubre de 2023 reconsideró su determinación, luego de escuchar al Ministerio Público y la Defensa, por lo finalmente denegó admitir el testimonio de refutación.[72]

Finalizado el juicio, el **5 de octubre de 2023**, la Hon. Juez Carmen Montalvo Laracuente le impartió las instrucciones al jurado sobre ambos cargos, incluyendo el requisito de unanimidad tanto para un veredicto de culpabilidad como de no culpabilidad.[73] Sin observaciones o solicitudes particulares de las partes, el caso quedó sometido al jurado.[74]

Más tarde en el día, el jurado regresó a sala con sus veredictos para ambos cargos. Sin embargo, informaron que los veredictos no eran por unanimidad.[75] Ante este cuadro, se suscitó el siguiente intercambio entre los presentes en sala:

> **HON. JUEZ CARMEN MONTALVO LARACUENTE**
> *…Señor presidente del Jurado, sin decir cuál es el veredicto, le pregunto si han llegado a un veredicto en ambos cargos.*
> **PRESIDENTE DEL JURADO**
> *Tenemos una decisión final.*
> **HON. JUEZ CARMEN MONTALVO LARACUENTE**
> *¿En ambos cargos?*
> **PRESIDENTE DEL JURADO**
> *En ambos cargos.*
> **HON. JUEZ CARMEN MONTALVO LARACUENTE**
> *Sin decir cuál es el veredicto. Le estoy preguntando si los mismos han sido por unanimidad.*
> **PRESIDENTE DEL JURADO**
> *No.*
> **HON. JUEZ CARMEN MONTALVO LARACUENTE**
> *Pues no hay veredicto. Pueden salir. Nuevamente se les instruye que vuelvan a sentarse, vuelvan a discutir lo que hayan estado discutiendo y cuando regresen a sala tienen que regresar con un veredicto de unanimidad para cualquiera de ellos, por unanimidad. Un veredicto válido, repetimos, es por unanimidad. ¿Alguna instrucción particular que deseen el Ministerio Público o la defensa*

---

[71] TPO, día 4 de octubre de 2023, pág.15, líneas 4-7, 20-22.
[72] TPO, día 5 de octubre de 2023, págs. 6-17.
[73] *Ídem*, págs. 60-81.
[74] *Íd.*
[75] TPO, pág. 88, líneas 15-22 y pág. 89, líneas 1-3.

*que volvamos a hacerle a los señores y señora del jurado?*

**FISCAL HASSAN MALDONADO CRUZ**
*Por parte del Ministerio Público, buenas noches ININTELEGIBLE jurado nuevamente, Fiscal Hassan Cruz Maldonado, por parte del Ministerio Público entendemos que ninguna por nuestra parte.*

[...]

**LCDO. JOSÉ LUIS MARTÍNEZ RODRÍGUEZ**
*De parte de la defensa a no ser que el mismo jurado ININTELIGIBLE alguna[sic] tipo de instrucción especial, nosotros no.[76]*

Así las cosas, el jurado se retiró nuevamente para deliberar. Más tarde, el jurado regresó a sala y en esta ocasión, contaban con veredictos unánimes. Rápidamente, se procedió a la lectura de las boletas. El jurado declaró culpable al Sr. Justiniano Ayala por el delito de daño agravado conforme al Artículo 199(d) del Código Penal, *supra.*[77] De igual forma, el jurado declaró al Sr. Justiniano Ayala culpable por el delito de maltrato agravado conforme al Artículo 3.2(a) de la Ley Núm. 54-1989, *supra.*[78]

El **26 de febrero de 2024**, el TPI dictó la Sentencia apelada en la cual le impuso al apelante una pena de reclusión de cárcel de tres (3) años de cárcel por el delito de daño agrado y ocho (8) años de cárcel por el delito de maltrato agravado.[79] Esto, para un total de nueve (9) años de cárcel a ser cumplidos concurrentemente entre sí.

En desacuerdo, el 6 de septiembre de 2024 el Sr. Justiniano Ayala acudió ante nos mediante *Alegato del Apelante* y señaló la comisión de los siguientes errores:

1. *Erró el Tribunal de Primera Instancia de Puerto Rico, Sala Superior, (Hon. Carmen Montalvo Laracuente, juez) al no permitir a la defensa la presentación de prueba testifical encaminada a socavar la credibilidad de la principal testigo de cargo.*

2. *Erró el Tribunal de Primera Instancia de Puerto Rico, Sala Superior, (Hon. Carmen Montalvo Laracuente, juez) cuando al anunciar el jurado*

---

[76] TPO, págs. 88-89, líneas 12-22 y 1-21.
[77] TPO, pág. 95, líneas 15-20.
[78] TPO, pág. 95, líneas 21-22 y pág. 96, líneas 1-3.
[79] Véase, Apéndice del Apelante, Exhibit I.

*había llegado a una decisión y aceptar que vio que no era unánime, le instruyó erróneamente "que volvieran a sentarse a discutir lo que habían estado discutiendo y que cuando regresaron a sala **tenían** que regresar con un veredicto de unanimidad".*

3. *Erró el Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Mayagüez, al declara y convicto al apelante por infracciones al artículo 3.2 (d) de la Ley 54, a pesar de que la prueba desfilada fue insuficiente, por no estar presentes en la misma todos los elementos del delito imputado.*

4. *Erró el Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Mayagüez, al declarar y convicto al apelante por los delitos imputados, a pesar de que la prueba de cargo que tuvo ante sí no estableció su culpabilidad más allá de duda razonable y fundada.*

Por su parte, el 1 de noviembre de 2024 el Estado presentó el *Alegato del Pueblo*.

Con el beneficio de la comparecencia de las partes, procedemos a disponer del recurso ante nuestra consideración.

-II-

-A-

La culpabilidad de un imputado de delito debe ser probada más allá de duda razonable.[80] La evidencia que presente el Ministerio Público, además de suficiente, eso es que verse sobre los elementos del delito imputado, tiene que ser satisfactoria, es decir, *"que produzca certeza o convicción moral en una conciencia exenta de preocupación".*[81]

Nuestro Alto Foro ha expresado que la determinación que hizo el juzgador de los hechos de la culpabilidad del acusado más allá de duda razonable es revisable en apelación por tratarse de un asunto tanto de hecho como de derecho.[82] No obstante, dado que le

---

[80] *Pueblo v. Cabán Torres*, 117 DPR 645, 652 (1986).
[81] *Pueblo v. Carrasquillo*, 102 DPR 545, 552 (1974).
[82] *Pueblo v. Rodríguez Pagán*, 182 D.P.R. 239, 259 (2011).

corresponde al jurado o, en su defecto, al juez dirimir los conflictos de prueba, no es aconsejable intervenir en tales determinaciones, *en ausencia de pasión, prejuicio, parcialidad o error manifiesto*.[83] Por lo tanto, la determinación de culpabilidad que hace el juzgador de los hechos a nivel de instancia, ya sea en un juicio por jurado o por tribunal de derecho, es merecedora *de una gran deferencia por parte del tribunal apelativo*.[84]

**-B-**

Debido a que el juicio por un jurado imparcial garantizado por la Sexta Enmienda de la Constitución federal es un derecho fundamental, los Estados deben asegurar dicho derecho por virtud del debido proceso de ley de la Decimocuarta Enmienda.[85] Por ello, el derecho a juicio por jurado aplica en toda su extensión en Puerto Rico.[86]

En nuestra jurisdicción, el Artículo II, Sección 11 de la Constitución de Puerto Rico establece que *"[e]n los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve"*. Incluso, la Regla 112 de Procedimiento Criminal establece lo previo de manera estatutaria.[87]

Sin embargo, la Corte Suprema Federal determinó que la precitada Sexta Enmienda requiere que los imputados de delito *que son juzgados por un jurado*, así lo sean mediante veredicto unánime.[88] Durante el año siguiente, el Tribunal Supremo de P.R., volvió a expresarse y estableció que un veredicto de no culpabilidad se tiene que alcanzar por unanimidad para no quebrantar la Sección

---

[83] *Ídem.* Énfasis nuestro.
[84] *Íd.* Énfasis nuestro.
[85] *Duncan v. Louisiana*, 391 US 145 (1968).
[86] *Pueblo v. Torres Rivera II*, 2014 DPR 288, 304 (2020); *Pueblo v. Santana Vélez*, 177 DPR 61, 65 (2009); *Pueblo v. Laureano*, 111 DPR 447 (1984).
[87] 34 LPRA Ap. II, R. 112.
[88] *Ramos v. Louisiana*, 590 US 83 (2020).

11 de la Carta de Derechos de la Constitución de Puerto Rico. Esto, ya que la unanimidad es una cualidad inherente al derecho a un juicio por jurado.[89]

Ahora bien, las instrucciones al Jurado constituyen "*el mecanismo procesal mediante el cual los miembros del Jurado toman conocimiento del derecho aplicable al caso*".[90] El Tribunal Supremo de P.R, ha enfatizado que, para que el Jurado pueda desempeñar dicha función, "*los miembros del mismo - que, de ordinario, son completamente legos en la materia - deben ser instruidos adecuadamente sobre el derecho aplicable por el magistrado que preside el proceso*".[91] Ello, asegura que el desenlace del proceso adversativo esté guiado por el derecho y los hechos.[92] Como corolario, toda instrucción al jurado deberá ser balanceada, clara, directa y no repetitiva.[93]

En términos generales, el acusado tiene el derecho a que se informe al Jurado de todos los aspectos del Derecho que, según cualquier teoría razonable, pudieran ser pertinentes en las deliberaciones, aunque la prueba de la defensa sea débil, inconsistente o de dudosa credibilidad.[94] Entre los distintos aspectos que deben incluirse en las instrucciones al Jurado se encuentran los elementos del delito imputado y, si la prueba así lo justifica, los elementos de los delitos inferiores al imputado o que estén comprendidos dentro de éste. Además, el tribunal deberá hacer hincapié en que el Ministerio Fiscal tiene la obligación de establecer todos los elementos del delito más allá de duda razonable.[95]

---

[89] *Pueblo v. Centeno*, 208 DPR 1, 20 (2021).
[90] *Pueblo v. Rodríguez Vicente*, 173 292, 297 (2008).
[91] *Pueblo v. Lorio Ormsby I*, 137 DPR 722, 727 (1994), citando a *Pueblo v. Bonilla Ortiz*, 123 DPR 434, 439 (1989).
[92] *Pueblo v. Rodríguez Vicente, supra*, págs. 297-298.
[93] *Pueblo v. Mattei Torres*, 121 DPR 600 (1988).
[94] *Pueblo v. Negrón Ayala*, 171 DPR 406, 414, (2007).
[95] *Pueblo v. Rosario*, 160 DPR 592, 604-605 (2003).

La Regla 137 de Procedimiento Criminal provee para que el Ministerio Público y la defensa soliciten instrucciones especiales al foro de instancia.[96] Particularmente, la precitada regla dispone lo siguiente:

> ***Cualquiera de las partes podrá presentar al tribunal una petición escrita de que se den determinadas instrucciones,*** *al terminar el desfile de la prueba, o anteriormente si el tribunal razonablemente así lo ordena. Deberá servirse copia de dicha petición a la parte contraria. El tribunal podrá aceptar o rechazar cualquiera o todas dichas peticiones, anotando debidamente su decisión en cada una, e informará a las partes de su decisión antes de que estas informen al jurado.* ***Ninguna de las partes podrá señalar como error cualquier porción de las instrucciones u omisión en las mismas a menos que planteare su objeción a ellas o solicitare instrucciones adicionales*** *antes de retirarse el jurado a deliberar, exponiendo claramente los motivos de su impugnación, o de su solicitud. [...] (Énfasis suplido).*

Así, pues, la precitada regla, *supra*, "*impide que se alegue error en instrucciones no objetadas ni solicitadas*".[97] No obstante, "*si las instrucciones que efectivamente transmitió el tribunal a los señores del jurado, o aquellas que omitió transmitir, "lesionan derechos fundamentales del acusado", éste en apelación puede levantarlo como error a pesar de no haberlas objetado oportunamente*". [Citas omitidas].[98] Ante una apelación impugnando las instrucciones impartidas a un Jurado, hay que considerar las instrucciones en conjunto para determinar su corrección o incorrección.[99]

El Tribunal Supremo de P.R., ha señalado que la utilización del libro de instrucciones es discrecional.[100] Sin embargo, constituye una buena práctica su utilización en aras de disminuir las posibilidades de error en las instrucciones al jurado y de lograr

---

[96] 34 LPRA Ap. II, R. 137.
[97] *Pueblo v. Velázquez Caraballo*, 110 DPR 369, 372 (1980).
[98] *Pueblo v. Ortiz Martínez*, 116 DPR 139, 151 (1985).
[99] *Pueblo v. Doménech Meléndez*, 98 DPR 64, 68 (1969).
[100] *Pueblo v. Colón González*, 209 DPR 967 (2022); En 17 de marzo de 2021, se aprobó un nuevo *Libro de Instrucciones al Jurado*, Secretariado de la Conferencia Judicial y Notarial, (actualizado en febrero 2022). Véase, *In re: Aprobación del Libro de Instrucciones al Jurado y otros*, 208 DPR 1042 (2022).

mayor uniformidad en la administración de la justicia criminal.[101] Las instrucciones que son impartidas según el manual están cobijadas por una presunción de corrección.[102]

Por lo tanto, quien las impugne deberá demostrar afirmativamente que la instrucción es errónea. "Para determinar la corrección o incorrección de las instrucciones hay que considerarlas en su totalidad y no por frases aisladas".[103]

**-C-**

Las Reglas de Procedimiento Criminal disponen que un jurado puede ser disuelto si, la deliberación se prolongare por un lapso que el tribunal estimare suficiente para concluir de una manera clara y evidente no haber posibilidad de que el jurado pudiera llegar a un acuerdo.[104] En estos casos, nuestras jurisprudencia le ha reconocido gran discreción al foro de instancia para resolver si hay posibilidad de que el jurado alcance un acuerdo y el tiempo cuánto debe extenderse la deliberación.[105] Inclusive, la Corte Suprema de los Estados Unidos también aprobó la facultad de los tribunales para instruirle al jurado que reconsidere su posición con el fin de alcanzar un veredicto unánime.[106]

**-D-**

La Regla 105 de Evidencia expresamente dispone lo relativo al efecto de error en la admisión o exclusión de evidencia. A esos fines establece lo siguiente como regla general:

> (…) *No se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia **ni se revocará por ello sentencia o decisión alguna a menos que***:
> (1)      ***La parte perjudicada*** *con la admisión o exclusión de evidencia **hubiere satisfecho los requisitos** de objeción, fundamento u oferta de prueba establecidos en la Regla 104* (…)

---

[101] *Íd.*; *Pueblo v. Echevarría Rodríguez I*, 128 DPR 299, 343 (1991).
[102] *Íd.*; *Pueblo v. Ortiz González*, 11 DPR 408, 410 (1981).
[103] *Íd.*, pág. 988, citando a *Pueblo v. Echevarría Rodríguez I, supra*, pág. 344.
[104] 34 L.P.R.A. Ap. II, R. 144.
[105] *Pueblo v. Miranda Santiago*, 130 DPR 507 (1992); *Pueblo v. Vélez Díaz*, 105 DPR 386 (1976).
[106] *Allen, v. US*, 164 US 492 (1986).

(2)      ***El tribunal que considera el señalamiento estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita***.[107]

La regla antes citada requiere expresa y claramente dos cosas.

**Primero**, *que el perjudicado cumpla con los requisitos correspondientes para probar su planteamiento*; y, **segundo**, que la *admisión o exclusión de prueba haya tenido un efecto sustancial en la sentencia emitida.*

-**E**-

Nuestro Código Penal, *supra*, tipifica el delito de daño agravado en el Artículo 199. Específicamente, dispone que:

> *Será sancionada con pena de reclusión por un término fijo de tres (3) años, toda persona que cometa el delito de daños en el Artículo 198 de este Código, si concurre cualquiera de las siguientes circunstancias:*
> > *(a) cuando el autor emplea sustancias dañinas, ya sean venenosas, corrosivas, inflamables o radioactivas, si el hecho no constituye delito de mayor gravedad;*
> > *(b) cuando el daño causado es de quinientos (500) dólares o más;*
> > *(c) cuando el daño se causa en bienes de interés histórico, artístico o cultural;*
> > ***(d) cuando el daño se causa a bienes muebles o inmuebles pertenecientes al Estado Libre Asociado de Puerto Rico o a entidades privadas con fines no pecuniarios**; o*
> > *(e) cuando el daño se causa a vehículos oficiales de las agencias del orden público.*
>
> *Si la persona convicta en la modalidad de delito grave es una persona jurídica será sancionada con pena de multa hasta diez mil dólares ($10,000). El tribunal también podrá imponer la pena de restitución.*[108]

De manera que, los elementos del delito de daño agravado son **(1)** que a propósito, conocimiento o temerariamente; **(2)** se

---

[107] *Reglas de Evidencia de 2009*, 32 L.P.R.A. Ap. VI, R. 105. Énfasis nuestro. Véase además la Regla 104 de Evidencia, *supra*, R. 104. *Esta expresamente exige del **perjudicado por una admisión errónea de evidencia que realice una objeción con el fin de evitar que el tribunal permita la admisión de una evidencia que entiende que le será perjudicial**.* Asimismo, *cuando se trata de una exclusión de evidencia, el perjudicado tiene el deber de hacer una oferta de prueba* correspondiente a la evidencia que entiende le favorece y que debe ser admitida pero que el foro sentenciador está excluyendo. Énfasis nuestro.
[108] 33 L.P.R.A. Sec. 5269 Énfasis nuestro.

destruya inutilice, altere, desaparezca o cause deterioro a un bien mueble o un bien inmueble ajeno, de forma total o parcialmente y **(3**) que el daño se le cause a bienes muebles o bienes inmuebles pertenecientes al Estado Libre Asociado de Puerto Rico.

**-F-**

Por último, el Artículo 3.2 inciso (a) de la Ley Núm. 54-1989, *supra*, dispone que un individuo incurre en maltrato agravado cuando:

> *[En] la persona del cónyuge, ex cónyuge o de la persona con quien se cohabita **o se haya cohabitado**, o con quien se sostiene **o haya sostenido** una relación consensual, o con quien se haya procreado un hijo o hija, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, se incurriere en maltrato según tipificado en esta Ley, mediando una o más de las circunstancias siguientes:*
>
> > *(a) Se penetra en la morada de la persona o en el lugar donde esté albergada y se cometiere allí maltrato, en el caso de cónyuges o cohabitantes, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, cuando éstos estuvieren separados o mediare una orden de protección ordenando el desalojo de la residencia a una de las partes; [...].[109]*

En esencia, el citado artículo se configura cuando (1) una persona penetra en la morada de la víctima, (2) la víctima fue una persona con quien haya cohabitado, (3) cuando penetra en la morada de la persona o en el lugar donde esté albergada y comete el maltrato allí.

**-III-**

En resumen, el Sr. Justiniano Ayala nos solicita que revoquemos la Sentencia del 26 de febrero de 2024 porque el TPI no permitió la presentación del testigo de refutación; instruyó erróneamente al jurado cuando estos no alcanzaron un veredicto

---

[109] 8 L.P.R.A. Sec. 632. Énfasis nuestro.

unánime; y la prueba desfilada no estableció la culpabilidad del apelante más allá de duda razonable. No le asiste la razón. Veamos.

**En primer orden**, al examinar los testimonios de los testigos del Ministerio Público ninguno indicó que la perjudicada, Sra. Gretchen Ojeda, buscaba o llevaba al apelante a su casa. Tampoco ésta testificó que buscaba al apelante a su casa, ni en el contrainterrogatorio la Defensa le preguntó a la Sra. Gretchen Ojeda sobre ese asunto, para que se pudiera presentar el testimonio del Sr. Camilo Méndez como testigo de refutación. Es decir, el apelante no sentó las bases para dar paso al testigo de refutación. Aun, si el TPI se hubiera equivocado al no admitir el testimonio de refutación, no consideramos que la exclusión de dicho testimonio fuese un factor decisivo o sustancial en la *Sentencia* apelada.

**En segundo orden**, en cuanto a la instrucción impartida por la juez al jurado, surge de la TPO que las mismas ocurren cuando el jurado regresa a la sala e informan que no han llegado a un veredicto de unanimidad en los dos cargos ante su consideración. Ante esa noticia, la juez les ordena a que regresen al salón de deliberación y vuelvan a deliberar hasta alcanzar un veredicto de unanimidad, ya sea para una decisión de culpable o no culpable. Reproducimos nuevamente las instrucciones impartidas por la juez que obran en la TPO:

> **HON. JUEZ CARMEN MONTALVO LARACUENTE**
> *…Señor presidente del Jurado, sin decir cuál es el veredicto, le pregunto si han llegado a un veredicto en ambos cargos.*
> **PRESIDENTE DEL JURADO**
> *Tenemos una decisión final.*
> **HON. JUEZ CARMEN MONTALVO LARACUENTE**
> *¿En ambos cargos?*
> **PRESIDENTE DEL JURADO**
> *En ambos cargos.*
> **HON. JUEZ CARMEN MONTALVO LARACUENTE**
> *Sin decir cuál es el veredicto. Le estoy preguntando si los mismos han sido por unanimidad.*
> **PRESIDENTE DEL JURADO**
> *No.*
> **HON. JUEZ CARMEN MONTALVO LARACUENTE**

*Pues no hay veredicto. Pueden salir. Nuevamente se les instruye que vuelvan a sentarse, vuelvan a discutir lo que hayan estado discutiendo y cuando regresen a sala tienen que regresar con un veredicto de unanimidad para cualquiera de ellos, por unanimidad. Un veredicto válido, repetimos, es por unanimidad. ¿Alguna instrucción particular que deseen el Ministerio Público o la defensa que volvamos a hacerle a los señores y señora del jurado?* [110]

No olvidemos que tanto el Tribunal Supremo de P.R., como el Tribunal Supremo Federal, han reconocido gran discreción a los jueces para resolver si hay posibilidad de que el jurado alcance un acuerdo y cuánto tiempo debe extenderse la deliberación;[111] incluso, la facultad de los tribunales para instruirle al jurado que reconsidere su posición con el fin de alcanzar un veredicto unánime.[112]

Nótese además, que la juez preguntó al Fiscal como a la Defensa, si deseaban que se emitiera alguna instrucción en particular y ambas partes estuvieron de acuerdo con las instrucciones emitidas en ese momento.

Somos del criterio que al considerar en conjunto las instrucciones emitidas por la juez, las mismas fueron correctas y dentro del marco de su discreción judicial. En otras palabras, las instrucciones que emitió la juez para que el jurado regresara con un veredicto unánime de culpable o no culpable, no lesionaron los derechos fundamentales del acusado.

**Por último**, en cuanto a la prueba documental y testimonial presentada en el juicio por jurado a través del Ministerio Público para probar, más allá de duda razonable, la culpabilidad del apelante, cumplió con el quantum de prueba para demostrar la comisión de los delitos imputados y la culpabilidad del apelante.

La perjudicada vivía en un apartamento de un residencial público del Estado y en horas de la madrugada el apelante rompió

---

[110] TPO del 5 de octubre de 2023, a las págs. 88-89, líneas 12-22 y 1-21.
[111] *Pueblo v. Miranda Santiago*, 130 DPR 507 (1992); *Pueblo v. Vélez Díaz*, 105 DPR 386 (1976).
[112] *Allen, v. US*, 164 US 492 (1986).

las celosías de la ventana para tener acceso al mismo y sujetarla entre sus brazos para que le permitiera dormir allí; todo ello, en contra de la voluntad de ésta. La perjudicada comenzó a gritar, y los vecinos llamaron a la policía, lo que provocó el arresto del apelante. Las partes sostuvieron una relación sentimental por siete años en la que la perjudicada fue objeto de violencia doméstica y orden de protección. El apelante se obstinaba en reanudar nuevamente la relación sentimental, a pesar de que la dama lo rechazaba y no deseaba estar con él. Esta evidencia llevó al jurado a emitir un veredicto unánime de culpable en ambos cargos de daño a una propiedad pública y maltrato agravado por violencia doméstica.

Siendo así, no nos vemos persuadidos a reemplazar el criterio del jurado en su veredicto unánime de culpabilidad. Por ello, es meritorio confirmar la *Sentencia* del 26 de febrero de 2024.

**-IV-**

Por los fundamentos antes expuestos, se confirma la Sentencia apelada.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

El Juez Salgado Schwarz disiente con voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>DELVIN S. JUSTINIANO AYALA<br><br>Apelante | KLAN202400297 | *Apelación* Procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Sobre: Art. 199 CP<br><br>Caso Núm.: ISCR202200648 (402) |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**OPINIÓN DISIDENTE DEL JUEZ CARLOS G. SALGADO SCHWARZ**

En San Juan, Puerto Rico, a 6 de febrero de 2025.

Por entender que el Tribunal de Primera Instancia incidió en dos de los cuatro errores señalados, no puedo compartir la decisión de mis hermanos jueces de confirmar la Sentencia apelada.

Adoptamos por referencia la Sección -I- de la Sentencia mayoritaria, la cual refleja fehacientemente el tracto procesal del caso.

-A-

El primer error presentado por el apelante reza de la siguiente manera:

Erró el Tribunal de Primera Instancia de Puerto Rico, Sala Superior, (Hon. Carmen Montalvo Laracuente, juez) al no permitir a la defensa la presentación de prueba testifical encaminada a socavar la credibilidad de la principal testigo de cargo.

Número Identificador

SEN2024 _____

En un proceder accidentado, luego de que el Ministerio Público sometiera su caso y la Defensa procediera a anunciar un testigo, el Ministerio Público objetó que se sentara ese testigo, ya que el mismo iba a ser un testigo de refutación, y el abogado de defensa no había sentado las bases en su contrainterrogatorio al testigo de cargo correspondiente para poder refutarle. Además, de que la Defensa no había anunciado al testigo de defensa al inicio del Juicio, por lo que no podía presentarse su testimonio.

En primer lugar, los únicos testimonios de defensa que tienen que presentarse antes del juicio, lo son los de coartada y el de incapacidad mental[113]. La defensa de un acusado no tiene que anunciar ningún testigo hasta que le toque su turno de presentar prueba una vez el Ministerio Público someta su caso.

En segundo lugar, la decisión del TPI para permitir el testimonio fue tomada, se solicitó reconsideración y ésta fue resuelta. No existe en el proceso criminal una segunda reconsideración. La parte adversamente afectada por la determinación interlocutoria tiene que recurrir a este foro revisor a solicitar el remedio que entienda le corresponde.

Además, no existe en las Reglas de Evidencia una objeción adelantada por preguntas especulativas como realizara el Ministerio Público en este caso. El debido proceso de ley dispone que se le tome juramento al testigo, se siente en la silla, se le haga la pregunta, y es entonces cuando se plantea una objeción sobre alguna

---

[113] Regla 74 de Procedimiento Criminal, 34 L.P.R.A. AP. II, R.74

cuestión probatoria que justifique la exclusión de este testimonio.

Para salvaguardar los derechos del acusado, se puede celebrar una Vista al amparo de la Regla 109 de Evidencia, en ausencia del Jurado, y en la cual el magistrado podría escuchar el testimonio de dicho testigo y determinar sobre su admisibilidad o exclusión, sin tener que recurrir a la imaginación, como efectivamente sucedió en el caso ante nos.

¿De qué forma el acusado, hoy convicto, va a demostrar que la exclusión de prueba tuvo un efecto sustancial en la sentencia emitida, si su defensa fue defenestrada antes de celebrarse una vista de admisibilidad, o de que se le hiciera alguna pregunta que el señor Fiscal objetara?

Este primer desvarío procesal que violenta el debido proceso de ley del apelante justificaría la revocación de la Sentencia dictada en su contra. Sin embargo, abundamos en el segundo error que el suscribiente entiende fuera cometido.

-B-

Erró el Tribunal de Primera Instancia de Puerto Rico, Sala Superior, (Hon. Carmen Montalvo Laracuente, juez) cuando al anunciar el jurado había llegado a una decisión y aceptar que vio que no era unánime, le instruyó erróneamente "que volvieran a sentarse a discutir lo que habían estado discutiendo y que cuando regresaron a sala tenían que regresar con un veredicto de unanimidad".

Mis hermanos en el sacerdocio, en su opinión mayoritaria, dispensan este error aduciendo que es según

Pueblo v. Velázquez Caraballo[114], "[es impedimento] que se alegue error en instrucciones no objetadas ni solicitadas".

Además, cita la Regla 137 de Procedimiento Criminal[115] que dispone como sigue:

> ***Cualquiera de las partes podrá presentar al tribunal una petición escrita de que se den determinadas instrucciones,*** *al terminar el desfile de la prueba, o anteriormente si el tribunal razonablemente así lo ordena. Deberá servirse copia de dicha petición a la parte contraria. El tribunal podrá aceptar o rechazar cualquiera o todas dichas peticiones, anotando debidamente su decisión en cada una, e informará a las partes de su decisión antes de que estas informen al jurado.* ***Ninguna de las partes podrá señalar como error cualquier porción de las instrucciones u omisión en las mismas a menos que planteare su objeción a ellas o solicitare instrucciones adicionales*** *antes de retirarse el jurado a deliberar, exponiendo claramente los motivos de su impugnación, o de su solicitud. [...] (Énfasis suplido).*

Acto seguido, expone la mayoría que:

> No obstante, "si las instrucciones que efectivamente transmitió el tribunal a los señores del jurado, o aquellas que omitió transmitir, "lesionan derechos fundamentales del acusado", éste en apelación puede levantarlo como error a pesar de no haberlas objetado oportunamente". [Citas omitidas].[116]

Es importante recalcar, que el error presentado no tiene que ver con las instrucciones que se le dan al jurado previo a su encomienda deliberativa. La

---

[114] 110 DPR 369, 372 (1980)
[115] Regla 137 de Procedimiento Criminal, 34 L.P.R.A. AP. II, R.137
[116] *Pueblo v. Ortiz Martínez*, 116 DPR 139, 151 (1985).

controversia ante nos tiene que ver con una interpretación errónea de parte del panel de Jurado, quienes regresaron al Salón de Sesiones con un alegado veredicto, el cual no era unánime, por lo que no era un veredicto válido según nuestro ordenamiento.

Una vez el Jurado regresa ante estas circunstancias, cualquiera de las partes, o el Tribunal *motu proprio*, puede instruir al panel con lo que se conoce como el *Allen Charge.*

Basado en un caso del Tribunal Supremo de los Estados Unidos de finales del Siglo XIX, *Allen v. United States*[117], el Juez Asociado Henry B. Brown resolvió en su opinión que cuando un Jurado está en una situación de "no-unanimidad" (deadlocked), no constituye error impartir una instrucción alentando a los miembros del jurado que están en minoría a que reconsideren su voto. Lo han llamado desde la "Instrucción Dinamita" hasta la "Instrucción Nuclear", por lo que hay que tener muchísimo cuidado impartiéndola sin que parezca que se está forzando al Jurado.

En los Tribunales de Distrito Federal correspondiente al 5to Circuito, tienen un "Committee on Pattern Jury Instructions", y tienen un documento uniforme para los distritos de dicho circuito, en el cual se incluye la Instrucción 1.53, que en su idioma original lee como sigue:

> 1.53 MODIFIED – "ALLEN" CHARGE
>
> I am going to ask that you continue your deliberations in an effort to agree upon a verdict and dispose of this case; and I have a few additional comments I would like for you to consider as you do so.

---

[117] 164 U.S. 492 (1896)

This is an important case. If you should fail to agree on a verdict, the case is left open and may be tried again.

Any future jury must be selected in the same manner and from the same source as you were chosen, and there is no reason to believe that the case could ever be submitted to twelve men and women more conscientious, more impartial, or more competent to decide it, or that more or clearer evidence could be produced.

Those of you who believe that the government has proved the defendant guilty beyond a reasonable doubt should stop and ask yourselves if the evidence is really convincing enough, given that other members of the jury are not convinced. And those of you who believe that the government has not proved the defendant guilty beyond a reasonable doubt should stop and ask yourselves if the doubt you have is a reasonable one, given that other members of the jury do not share your doubt.

Remember at all times that no juror is expected to yield a conscientious opinion he or she may have as to the weight or effect of the evidence. But remember also that, after full deliberation and consideration of the evidence in the case, it is your duty to agree upon a verdict if you can do so without surrendering your conscientious opinion. You must also remember that if the evidence in the case fails to establish guilt beyond a reasonable doubt, the accused should have your unanimous verdict of Not Guilty.

You may be as leisurely in your deliberations as the occasion may require and should take all the time which you may feel is necessary.

I will ask now that you retire once again and continue your deliberations with these additional comments in mind to be applied, of

course, in conjunction with all of the instructions I have previously given to you.[118]

Habiendo examinado un modelo de "Allen Charge" con la cautela que corresponde y la prudencia procesal que amerita dicha instrucción, examinemos la Instrucción que impartiera el TPI en el caso *a quo*:

> HON. JUEZ CARMEN MONTALVO LARACUENTE:
>
> Pues no hay veredicto. Pueden salir. Nuevamente se les instruye que vuelvan a sentarse, vuelvan a discutir lo que hayan estado discutiendo y cuando regresen a sala tienen que regresar con un veredicto de unanimidad para cualquiera de ellos, por unanimidad. Un veredicto válido, repetimos, es por unanimidad. ¿Alguna instrucción particular que deseen el Ministerio Público o la Defensa que volvamos a hacerle a los señores y señoras del jurado?[119]

Esa instrucción parece más una orden que una guía. Esa instrucción les dice a aquellos que están en la mayoría en ese panel que pueden mirarle a la cara a aquellos que están en minoría y amedrentarles. En ese panel existían ciudadanos, vecinos del distrito judicial de Mayagüez, que entendían a conciencia que el acusado era no-culpable, hasta que la Jueza que presidió el caso les dijo que independientemente de la duda razonable que pudiera tener ese jurado, **tenían** que regresar con un veredicto unánime.

No es el factor de que se haya instruido el Allen Charge a los jurados, es la **forma** en que se hizo la que constituye una violación al debido proceso de ley, de aquellos que en Pueblo v. Ortiz Martínez, supra, decían

---

[118] 5th Circuit Pattern Criminal Jury Instructions, 1.53, (2019).
[119] TPO, 5 de octubre de 2023, a la página 89

que si ""lesionan derechos fundamentales del acusado", éste en apelación puede levantarlo como error a pesar de no haberlas objetado oportunamente".

El veredicto en este caso no cumple con las garantías que debiera tener un caso criminal, por lo que provocaría la revocación del mismo, junto con la Sentencia dictada.

-C-

Por lo anteriormente esbozado me aparto de la determinación de mis compañeros de panel, y muy respetuosamente, **DISIENTO**.

CARLOS G. SALGADO SCHWARZ
JUEZ DE APELACIONES